# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

**\* \* \***

| | |
|---|---|
| Trustees of the Plumbers and Pipefitters Union Local 525 Health and Welfare Trust and Plan; Trustees of the Plumbers and Pipefitters Union Local 525 Pension Plan; Trustees of the Plumbers and Pipefitters Local Union 525 Apprentice and Journeyman Training Trust for Southern Nevada, | Case No.: 2:10-cv-02258-RLH-NJK |
| Plaintiffs, | **O R D E R** |
| vs. | (Motion for Default Judgment – #34) |
| T.E.N. Mechanical Corp. et al, | |
| Defendants. | |

Before the Court is Plaintiffs Trustees of the Plumbers and Pipefitters Union Local 525 Health and Welfare Trust and Plan, Trustees of the Plumbers and Pipefitters Union Local 525 Pension Plan, Trustees of the Plumbers and Pipefitters Local Union 525 Apprentice and Journeyman Training Trust for Southern Nevada's (collectively "Plaintiffs") **Motion for Default Judgment against Defendant T.E.N. Mechanical Corp.** ("TEN") (#34, filed on March 18, 2013).  Defendant TEN has not responded. For the reasons discussed below, the Motion is granted.

//

**BACKGROUND**

This suit arises from unpaid Trust Fund contributions under an employee benefit program governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs' Complaint alleges the following facts:

Plaintiffs are labor organizations representing plumbing employees working in Nevada. Plaintiffs and employees are parties to a Trust Agreement created and maintained pursuant to the Labor Management Relations Act of 1947 ("LMRA"). 29 U.S.C. § 185(a). Plaintiffs are fiduciaries of the Trust Agreements and have standing to sue on behalf of the employees. ERISA, 29 U.S.C. § 1002(21)(A). The employees were parties to a collective bargaining agreement ("CBA") governed by ERISA with TEN. Per the terms of the CBA, TEN was required to pay monthly Trust Fund contributions to the Plaintiffs, as trustees, for each employee who performed work under the CBA. Additionally, TEN was required to submit monthly remittance reports for those contributions. TEN has defaulted on the payments. Demand has been made to TEN for payment of the delinquent amounts, but TEN has failed and refused to pay, and continues to refuse to pay, the delinquent amounts.

On December 29, 2010, Plaintiffs and TEN entered a stipulated/consent jugdment. On February 17, 2011, this Court entered a Judgment by Confession in favor of Plaintiffs and against TEN for the $206,484.81, which accounted for known unpaid contributions from August 2009 to January 2010. TEN failed to satisfy the judgment. For a time, TEN was in bankruptcy. The bankruptcy has since been dismissed without discharge. On August 23, 2012, Plaintiffs filed the Complaint against TEN alleging one claim for deliquent contributions. The Complaint also included claims against other defendants. TEN was served with the summons and complaint on September 12, 2012 with service to TEN's registered agent.  TEN has not appeared or answered. On October 26, 2012, the Clerk of the Court entered default against Defendant TEN.  Plaintiffs now request default judgment against TEN.

//

**DISCUSSION**

**I. Legal Standard**

Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

**II. Analysis**

**A. Procedural Requirements**

Plaintiffs have satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). First, the Clerk properly entered a default against Defendant pursuant to

Fed. R. Civ. P. 55(a).  (#20.)  Second, as a corporation, Defendant is not an infant or incompetent person, and is not otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. Third, insofar as Defendant has not answered or otherwise responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated.  Thus, there is no procedural impediment to entering a default judgment.

**B. *Eitel* Factors**

*1. Possibility of Prejudice*

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002).  Here, Defendant has not answered, made an appearance, or otherwise responded to the Complaint.  Due to Defendant's refusal to appear in this action, there is the possibility of prejudice to Plaintiffs in the absence of default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.  Thus, this *Eitel* factor weighs in favor of entering default judgment.

*2. Substantive Merits and Sufficiency of the Complaint*

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure.  *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see also* Fed. R. Civ. P. 8.  Here, Plaintiffs assert one claim against TEN for delinquent contributions. Plaintiffs claim is supported by the prior Judgment by Confession entered in its favor (#3) and the allegations in the Complaint.

*3. Sum of Money at Stake*

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of [a defendant's] conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176.  "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct."  *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D.

Cal. 2010). Plaintiffs seek $208,527.00 in actual damages for unpaid contributions, $99,263.00 in interest, $99,263.00 for liquidated damages, $37,093.00 in past attorneys' fees and costs, and $5,000 in future anticipated attorneys' fees and costs. Here, the amount sought is proportional to the harm caused by TEN's failure to pay the contributions required under the Collective Bargaining Agreement. The fourth *Eitel* factor weighs in favor of entry of default judgment.

### 4. Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material fact in the case. *PepsiCo*, Inc., 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion.

### 5. Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. The evidence shows that Defendant TEN's registered agent was served with the Summons and Complaint on September 12, 2012, pursuant to Fed. R. Civ. P. 4(f). (#15.) Defendant received service of the Summons and Complaint one month before the Clerk's Entry of Default on October 26, 2012 (#19). Thus, given the period of time during which Defendant had notice of the Complaint and in which Defendant failed to answer or otherwise respond to the Complaint, it is unlikely that Defendant's failure to respond and subsequent default resulted from excusable neglect.

### 6. Decision on the Merits

The seventh *Eitel* factor states that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Thus, the Court is not precluded from entering default judgment against Defendant.

AO 72
(Rev. 8/82)

1          In sum, the *Eitel* factors weigh in favor of default judgment on Plaintiffs'

2    delinquent contributions claim.

3          **C. Damages**

4          As to the amount of damages, ERISA explicitly provides for the recovery of unpaid

5    contributions, interest on the unpaid contributions, liquidated damages,[1] attorney's fees and costs,

6    and other relief deemed appropriate. 29 U.S.C. § 1132(g)(2). Plaintiffs have adequately pled and

7    shown $208,527.00 in unpaid contributions, $99,263 in pro rated interest, $99,263 in liquidated

8    damages as allowed under ERISA, and $33.173.50 in adjusted attorney's fees and costs as

9    discussed below. Thus, the total amount of damages is $440,226.50. The Court decreases this

10   amount by previous partial payments already credited $121,494.00[2] bringing the final total to

11   $318,732.50.

12         **D. Attorney's Fees and Costs**

13         The Ninth Circuit affords trial courts broad discretion in determining the

14   reasonableness of costs and fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

15   Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v.*

16   *Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir.

17   2000). The Court must first determine a reasonable fee by multiplying "the number of hours

18   reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

19   Next, the court decides whether to adjust the lodestar calculation based on an evaluation of the

20   factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which

21   have not been subsumed in the lodestar calculation. See Fischer, 214 F.3d at 1119 (citation

22   omitted). Here, the *Kerr* factors are not implicated.

23   _____

24        [1] The statute provides for the greater of (i) interest on the unpaid contributions or (ii)
     liquidated damages under the agreement not to exceed 20 percent. 29 U.S.C. §
25   1132(g)(2)(c)(i-ii). Here, the interest is greater and therefore, the basis of calculation.

26        [2] This includes $58,494.00 paid by TEN, $33,000.00 paid by Defendant Wojtazek, and
     $30,000.00 paid by American Contractors' Indemnity Company.

AO 72
(Rev. 8/82)

1          Courts consider the experience, skill, and reputation of the attorney requesting fees

2  when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 &

3  n.6 (9th Cir. 2002). A reasonable hourly rate should reflect the prevailing market rates of attorneys

4  practicing in the forum community for "similar services by lawyers of reasonably comparable skill,

5  experience and reputation." *See id.; see also Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).

6          In addition to evidence supporting the rates claimed, "[t]he party seeking an award

7  of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also*

8  *Jordan*, 815 F.2d at 1263. "Where the documentation of hours is inadequate, the district court

9  may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "The district court also should

10  exclude from this initial fee calculation hours that were 'not reasonably expended'." *Hensley*, 461

11  U.S. at 433-34 (citation omitted). "In other words, the court has discretion to 'trim fat' from, or

12  otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l*

13  *Business Factors, Inc.*, 897 F. Supp. 458, 460 (D. Nev. 1995) (quotation omitted); *see also Gates*

14  *v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

15          Plaintiff requests reimbursement of attorney's fees at $150-200 for paralegals,

16  $225-300 for associates, and $340 an hour for partner's time. The Court finds the rate for

17  paralegals to be excessive. The Court will only allow $100.00/hr for a paralegal's time. The

18  remaining rates are reasonable. After reviewing Plaintiff's attached exhibits, the Court finds that

19  Plaintiff's calculation attorney labor is a reasonable amount of time spent on this litigation.

20  Furthermore, the Court finds Plaintiff's fee request, with the adjustment to $100.00/hr for

21  paralegals, is also reasonable. Therefore, the Court orders attorney's fees and costs in the adjusted

22  amount of $33,173.50. However, the Court does not award the additional $5,000.00 requested for

23  future attorney's fees and costs.

24  //

25  //

26  //

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiffs Trustees of the Plumbers and Pipefitters Union Local 525 Health and Welfare Trust and Plan, Trustees of the Plumbers and Pipefitters Union Local 525 Pension Plan, Trustees of the Plumbers and Pipefitters Local Union 525 Apprentice and Journeyman Training Trust for Southern Nevada's **Motion for Default Judgment against Defendant T.E.N. Mechanical Corp.** ("TEN") (#34, filed on March 18, 2013) is GRANTED.

The Clerk of the Court shall enter judgment against the Defendant T.E.N. Mechanical Corp. in the amount of $285,559.00 plus attorney's fees and costs in the amount of $33.173.50 for a total judgment of $318,732.50.

Dated: March 26, 2013.

ROGER L. HUNT
**United States District Judge**

AO 72
(Rev. 8/82)